*140 OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioner, C&P Partners, is the fee owner of certain real property located at 419 Delaware Avenue, Albany, New York. CVS is the lessee of said property. The subject property was assessed at $626,400 on the City of Albany 2000 assessment roll. The lessee of said property then sought reduction of the assessed value by commencement of a tax certiorari proceeding pursuant to article 7 of the Real Property Tax Law. The proceeding was resolved by stipulation of settlement wherein the lessee and respondent, Department of Assessment and Taxation, agreed to reduce the assessed value to $556,800. Thereafter, petitioner commenced the instant tax certiorari proceeding to review the assessed value of the property on the city’s 2001 assessment roll, which reported a value of $556,800, per the previous year’s stipulation of settlement.
Respondent seeks dismissal of the instant proceeding pursuant to CPLR 3211 (a) (7) upon the ground that the petition fails to state a cause of action. More specifically, respondent contends that petitioner is barred by RPTL 727 (1) and (3) from filing a tax certiorari petition for three succeeding assessment rolls from the 2000 stipulation of settlement between respondent and lessee.
In opposition, petitioner offers the affidavits of Timothy R. Conley, managing partner of C&P Partners, and James J. Barriere, Esq., of counsel to the law firm of Couch White, LLP, attorneys for petitioner. Mr. Conley contends that it is not bound by the prior stipulation of settlement as the lessee is not an aggrieved party, and accordingly lacked standing to pursue the 2000 tax certiorari proceeding. Mr. Conley acknowledges that the lease agreement provides that “[C&P Partners] shall pay to the local tax authorities and other governmental agencies throughout the term of this lease * * * all real estate taxes, including school and related taxes as well as all assessments which may be levied against the [property] and the land and buildings comprising same.” Mr. Conley explains, however, that pursuant to the lease agreement, the lessee must pay both a “fixed rent” and an “annual percentage rent, which is calculated as a percentage of CVS’s gross annual sales that exceed certain specified ‘break points.’ ” The lessee is then permitted to deduct from the latter percentage rent “any tax payment which relates to an increase in taxes over the base year (January 1, 1982, to December 31, 1982) made to the *141 [petitioner] pursuant to Article 26 of this lease * * * .” Consequently, Mr. Conley argues, “a property tax increase would cause an increase in CVS’s annual cost to lease the property only to the extent that its required tax reimbursement exceeds the percentage rent owed in the same year.” Mr. Conley states that “[a]s the tax reimbursements never exceeded the amount of the percentage rent, CVS’s total cost of leasing the property has never been affected by any increase in the property’s assessment.” Mr. Conley argues that “C&P Partners and its predecessor have been responsible for all property taxes paid in excess of the 1982 level since the beginning of the lease term.” Mr. Conley further asserts that the lessee did not have authority to pursue such a proceeding under the terms of the lease agreement, nor did petitioner receive notice of the 2000 tax certiorari proceeding. In addition, attached to Mr. Conley’s affidavit is the report of an appraiser retained by petitioner who concluded that the property should be assessed at $321,275.
In reply, respondent offers the affidavit of Assistant Corporation Counsel Joseph G. McCann, Esq. Attorney McCann argues that “notwithstanding [the] dual rent provisions, the lease patently requires [the lessee] £to reimburse the Landlord for the real estate taxes, school and related taxes and assessments levied against [the subject property]’ * * * .” Thus, attorney McCann argues, “Petitioner may remit tax payments directly to the taxing authority, but CVS is contractually responsible for reimbursement of the total amount of taxes levied on the property.” Attorney McCann further contends that “[i]f CVS fails to attain the ‘break point’ in gross sales in any year, no annual percentage rent is due and [lessee] is afforded no deduction of any tax increase over the base year. Thus, an increase in the assessment directly affects the pecuniary interests of CVS if it fails to reach the ‘break point’ in sales. As such, CVS qualifies as an aggrieved party and can legally challenge its tax assessment, absent precise language in the lease agreement to the contrary.” Finally, attorney McCann argues that petitioner’s alleged failure to receive notice of an increase in the assessed value does not invalidate the levy, collection and enforcement of the payment of taxes on the subject property.
RPTL 727 provides, in relevant part, that
“Except as hereinafter provided, and except as to any parcel of real property located within a special assessing unit as defined in article eighteen of this chapter where an assessment being reviewed pur *142 suant to this article is found to be unlawful, unequal, excessive or misclassified by final court order or judgment, the assessed valuation so determined shall not be changed for such property for the next three succeeding assessment rolls prepared on the basis of the three taxable status dates next occurring on or after the taxable status date of the most recent assessment under review in the proceeding subject to such final order or judgment.” (See, RPTL 727 [1].)
“No petition for review of the assessment on such property shall be filed while the provisions of subdivision one of this section are applicable to such property.” (See, RPTL 727 [3].)
Additionally, RPTL 704 (1) provides, in relevant part, that “[a]ny person claiming to be aggrieved by any assessment of real property upon any assessment roll may commence a proceeding under this article * * * .”
In the instant matter, it is undisputed that CVS, the lessee, is not a fractional lessee, but rather is the total lessee of the subject property. It is undisputed that the lease agreement between CVS and the petitioner does not contain a provision conferring upon CVS the petitioner’s right to assert its undivided property interest in a challenge of an assessment. It is also undisputed that the lease agreement provides for “dual” rent payments whereby CVS is obligated to pay to petitioner a “fixed rent” plus an “annual percentage rent,” the latter calculated as a percentage of CVS’s gross annual sales that exceed certain specified “break points.” Additionally, CVS is permitted to deduct from the latter percentage rent “any tax payment which relates to an increase in taxes over the base year (January 1, 1982, to December 31, 1982) made to the [petitioner] pursuant to Article 26 of this lease * * * .” As previously discussed, the parties do dispute, however, whether the foregoing rent formula results in a direct or remote impact upon CVS’s pecuniary interests. In addition to the foregoing, the lease further provides, inter alia, that
“The Landlord shall pay to the local tax authorities and other governmental agencies throughout the term of this lease and any renewal thereof, all real estate taxes, including school and related taxes as well as all assessments which may be levied against the Center and the land and buildings comprising the same. * * *
“The Tenant agrees to reimburse the Landlord for *143 the real estate taxes, school and related taxes and assessments levied against the Center land and buildings for each tax fiscal year of the term of this lease and any renewal thereof.”
Petitioner relies upon the Court of Appeals decision in Matter of Waldbaum, Inc. v Finance Adm’r of City of N.Y. (74 NY2d 128 [1989]) to support its position that CVS lacked standing to challenge the 2000 assessment. In Waldbaum, the Court determined that the partial, or fractional, lessee was not a party sufficiently aggrieved to warrant its personal challenge of an assessment in a tax certiorari proceeding and therefore lacked the necessary standing (id. at 132). Factors considered by the Court included (1) the lack of a provision in the lease obligating the lessee to pay real property taxes on the leased premises, the lessee only obligated to pay rent “which may be affected, in part, by an increase in the landlord’s tax obligation”; (2) the lack of a provision in the lease permitting the lessee to contest the assessment in the owner-lessor’s name; and (3) the remote and consequential impact, rather than a direct impact, of the assessment upon the lessee’s pecuniary interests (id. at 131). The Court held that:
“[a] fractional lessee lacks standing to maintain a tax certiorari proceeding unless the lease expressly confers the right to assert the lessor’s undivided property interest in a challenge of the assessment, or unless the lessee is required to pay directly the taxes levied against the lessor’s undivided parcel. In either instance, the assessment must also have a direct adverse affect on the challenger’s pecuniary interests.” (Id. at 132.)
In so holding, the Waldbaum Court reasoned that:
“Implicit in the precedents upholding the right of a nonowner to maintain a tax certiorari proceeding has been the requirement for an undivided tax liability. In each cited case, the party aggrieved was, by contractual rearrangement of the obligation, made wholly responsible for the entire tax levy in the stead of the owner-taxpayer. * * * The adverse impact on a petitioner’s pecuniary interests ‘must not be a remote and consequential result, but a direct one’ (Matter of Walter, supra, at 357). * * * “Petitioner Waldbaum argued successfully in the Appellate Division that there is no substantive difference between a total lessee and a fractional les *144 see paying, in effect, a pro rata share of the real property taxes. It is not so successful here. The authorities pointed to as persuasive support for its view are consonant with the rule, to which we adhere, that the aggrieved party’s pecuniary interest be directly affected and that the total assessment be subject to the challenge. In Matter of Big ‘V’ Supermarkets v Assessor of Town of E. Greenbush (114 AD2d 726), the fractional lessee petitioner agreed to pay ‘all taxes and assessments which will or may become a lien on the Shopping Center’ and was properly found to be a party aggrieved. In Matter of Ames Dept. Stores v Assessor of Town of Concord (102 AD2d 9), a commercial lessee responsible for a pro rata share of the taxes had, by express lease provision, the right to contest a tax assessment in the name of the lessor. In each case, the lessee asserted a unitary property interest pursuant to a contractual obligation * * * .” (Id. at 133-134.)
Unlike the circumstances in Waldbaum (supra), the lessee in the instant matter is a total lessee, and the contract obligates the lessee to reimburse the petitioner for 100% of the taxes on the property. The circumstances presently before the court are the same as those in Waldbaum in that the lease does not contain a provision authorizing CVS to bring an article 7 proceeding on behalf of the petitioner, and the petitioner owner is ultimately liable for the direct payment of taxes. The contractual rent formula in Waldbaum is also the same as that set forth in the instant matter. As in Waldbaum, the lessee in the instant matter is permitted to deduct from its “percentage rent” any tax payment which relates to an increase in taxes over the base year.
The determinative issue presently before the court is whether the dual rent formula results in a direct or a remote and consequential impact upon the lessee’s pecuniary interests. This is supported by the Court of Appeals holding in Waldbaum (supra), that even where the lease expressly confers the right to assert the lessor’s undivided property interest to challenge an assessment, or where the lessee is. required to pay directly the taxes levied, the assessment must nonetheless have a direct adverse affect on the challenger’s pecuniary interests (id. at 132). Thus, even though CVS is a total lessee, and is indirectly responsible to reimburse petitioner for all of the real estate taxes, including school and related taxes, the *145 impact of the assessment upon the lessee’s pecuniary interests must also be determined. In making such a determination, this court cannot ignore the fact that the dual rent formula in the instant matter is strikingly similar, if not the same as, the rent formula in Waldbaum. In Waldbaum (supra), the Court of Appeals held that the contractual rent formula was “an insufficient predicate for allowing [the lessee] to bring a personal tax certiorari proceeding in lieu of or in addition to the owner-lessor” (id. at 135). In so holding, the Court determined that such a rent formula “renders the impact of a tax increase legally remote and only consequential” as it “had an actual impact on Waldbaum’s pecuniary interest only to the extent that it exceeded the ‘percentage rent’ Waldbaum owed on its gross annual sales” (id.). Accordingly, like the Court in Waldbaum, this court also finds that an increase in taxes on the subject property will have an actual impact on the lessee’s pecuniary interests only to the extent that an increase over the base year exceeds its “annual percentage rent” owed on its gross annual sales (see, id.). Although respondent argues that an “increase in the assessment directly affects the pecuniary interests of CVS if it fails to reach the ‘break point’ in sales,” as determined by the Court in Waldbaum (supra), such a potential impact is remote and consequential and CVS does not, therefore, qualify as an aggrieved party with standing to challenge an assessment of the subject property (id.).
The court also notes petitioner’s claim that it never received notice of the lessee’s prior challenge to the 2000 assessment roll. Nor does respondent offer any proof to show that such notice was provided. Instead, respondent argues that, pursuant to RPTL 510 (1), petitioner’s failure to receive notice of the 2000 property tax increase does not prevent the levy, collection and enforcement of taxes on the subject property. The court finds respondent’s reference to RPTL 510 (1) irrelevant to petitioner’s claim that it failed to receive notice of the challenge, and therefore declines to adopt the same. On the issue of notice, however, the court finds that, as a matter of fairness, petitioner’s lack thereof in the prior proceeding must necessarily defeat any claim that petitioner is now collaterally estopped from asserting the issue of standing. Petitioner was never afforded the opportunity to fully and fairly litigate the issue of standing in the prior proceeding (see, Granite Constr. Co v Hartford Acc. & Indem. Co., 173 AD2d 948, 950 [3d Dept 1991]) nor does the necessary privity exist between petitioner and CVS, the relationship between the parties having arisen well *146 before commencement of the prior proceeding between CVS and respondent (see, Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485-487 [1979]). Thus, the court also finds that, since RPTL 727 presupposes standing, and in light of petitioner’s claim that it never received notice of the prior proceeding so as to contest the lessee’s standing, respondent’s present claim that RPTL 727 operates as a bar to the instant matter is not persuasive.
Accordingly, it is ordered that respondent’s motion to dismiss this proceeding is hereby denied.